UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-----------------------------------------------------
                                    :
UNITED STATES OF AMERICA            :
                                    :
              Plaintiff,            :        CASE NO. 1:02-CR-168
                                    :
                                    :
vs.                                 :        OPINION & ORDER
                                    :        [Resolving Docs. 99, 101, 120, 121, 123, 128,
                                    :        130.]
RONALD MERKOSKY                     :
                                    :
              Defendant.            :
                                    :
-----------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        On January 14, 2008, Defendant Ronald Merkosky filed a motion to vacate, set aside, or

correct his sentence pursuant to 28 U.S.C. § 2255.  [Doc. 99.]  With his motion, Merkosky seeks

relief from the judgment and sentence that the United States District Court for the Northern District

of Ohio imposed following his conviction on one count of possession and distribution of

pseudoephedrine in violation of 21 U.S.C. § 841(d)(2) – subsequently re-codified as 21 U.S.C. §

841(c)(2) –  and one count of furnishing false or fraudulent sales records in violation of 21 U.S.C.

§ 843(a)(4).  [Id.]  Further, Defendant Merkosky has moved for an evidentiary hearing on his § 2255

motion. [Doc. 101.]  The United States, as Plaintiff, moves to strike Defendant Merkosky's § 2255

motion, arguing that it was not properly formatted and exceeded the allotted number of pages.  [Doc.

104.]

        On October 29, 2008, Magistrate Judge James S. Gallas filed a Report and Recommendation

that recommended the Court grant in part the Government's motion to strike Defendant Merkosky's

-1-

Case No. 1:02-CR-168
Gwin, J.

§ 2255 motion to prevent consideration of Merkosky's brief after page 30. [Doc. 120 at 18.] The

Magistrate Judge also recommended the Court deny Defendant Merkosky's motion to vacate, set

aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and his accompanying motion for an

evidentiary hearing. [*Id.*] Merkosky has objected to the Magistrate Judge's Report and

Recommendation. [Doc. 121.] The Government responded to Merkosky's objections, [Doc. 123.],

and Merkosky rebutted the Government's response, as well as moved the Court to hold

recommendations in abeyance pending appeal. [Doc. 128.]

For the reasons provided below, the Court **ADOPTS** the Magistrate Judge's Report and

Recommendation and **GRANTS** in part the Government's motion to strike and **DENIES** Defendant

Merkosky's § 2255 motion and Merkosky's motion for an evidentiary hearing. Further, the Court

**DENIES** as moot Merkosky's motion to hold recommendations in abeyance pending appeal.

## I. Background

In this § 2255 action, Defendant Ronald Merkosky challenges the constitutionality of his

conviction by the United States District Court for the Northern District of Ohio under the Fourth,

Fifth, and Fourteenth Amendments. The Defendant claims that he was convicted based upon a

criminal investigation conducted by a federal employee posing as a federal law enforcement officer

in violation of the Fourteenth Amendment, that the search warrant affidavit was submitted with

reckless disregard for the truth in violation of the Defendant's Fourth Amendment rights, and that

the indictment contained false and fraudulent material information in violation of the Defendant's

Fifth Amendment rights.

On May 8, 2002, Defendant Ronald Merkosky was indicted in the Northern District of Ohio

on three counts: (1) conspiracy to distribute a mixture of substance containing a detectable amount

Case No. 1:02-CR-168
Gwin, J.

of pseudoephedrine in violation of 21 U.S.C. § 846 and 841 (d)(2) (subsequently re-codified as 841

(c)(2)); (2) possession and distribution of pseudoephedrine in violation of 21 U.S.C. § 841(d)(2); and

(3) furnishing false or fraudulent sales records in violation of 21 U.S.C. § 843(a)(4). [Doc. 99, Att.

1 at 1.]

These charges arose out of Defendant Merkosky's sale of products containing

pseudoephedrine, "an active ingredient in weight loss products and over-the-counter medications for

the treatment of asthma and nasal congestion." *United States v. Merkosky*, 135 Fed. Appx. 828, 830

(6th Cir. 2005). Merkosky, the president of National Novelty Corporation located in Painesville,

Ohio, had applied to become "a registered wholesale distributor of products containing

pseudoephedrine, a List I chemical whose distributors are required to register with the Drug

Enforcement Administration ("DEA") because the substance is widely used in the illicit production

of methamphetamine, a controlled substance." *Id.* In response to his application, DEA diversion

investigator Janice Margreta met with Merkosky to discuss the issues involved with the distribution

of pseudoephedrine and to explain the relevant record-keeping requirements. *See id.* at 830-31.

Specifically, Margeta told Merkosky that "he would be required to keep a record of all purchases and

sales of pseudoephedrine exceeding specified threshold amounts[] and to keep internal records of

customer lists and customer records for the DEA." *Id.* at 831. Following this meeting, "Merkosky

was approved to distribute pseudoephedrine and a DEA Certificate of Registration was issued to

National Novelty in December 1997." *Id.*

In the spring of 1999, Defendant Merkosky requested that DEA agent Michael Malasky and

his supervisor meet with Merkosky at his place of business in Painesville. *Id.* Merkosky told the

agents that "some Arab store owners were asking him to sell them increasingly greater amounts of

-3-

Case No. 1:02-CR-168
Gwin, J.

pseudoephedrine, but he did not give the DEA the names of any these store owners." *Id.*  Agent

Malasky indicated to Defendant Merkosky that if he had a problem with an individual store owner,

he should give the agents the owner's name, and the agents would visit that owner.  *Id.*

Shortly after this conversation took place, agent Malasky received a letter from Washington

that contained a "suspicious activity report." *Id.*  The report indicated that some of the products

containing pseudoephedrine that had been shipped from Painesville "had been seized from a

methamphetamine lab in a body shop in Pasadena, California." *Id.*  Agent Malasky subsequently

went to National Novelty to examine its records and determined that National Novelty had purchased

a product called "Mini-Thins" from its supplier – Body Dynamics, Inc.("BDI") – that bore the same

lot number as the pseudoephedrine products confiscated from the methamphetamine lab in

California.  *Id.*  After interviewing many of Merkosky's customers, agent Malasky contacted

Merkosky and asked him whether the records Merkosky "had supplied to the DEA reflected all the

pseudoephedrine he had purchased and sold.  Merkosky eventually admitted to Malasky that he had

purchased and sold quantities of pseudoephedrine from Auburn Pharmaceutical as well as from BDI,

and he provided Malasky with those sales records." *Id.*

On September 23, 1999, in accordance with a search warrant covering Merkosky's place of

business, house, and personal property, agents seized documents, sales invoices from BDI and

Auburn Pharmaceutical, and six computers.  *Id.*  Merkosky's invoices that were seized by the agents

were not consistent with the invoices that the DEA had received from Auburn Pharmaceutical.  *Id.*

A subsequent investigation of Merkosky's records revealed "that a significant number of sales

reported in [the] records were to customers who had either never done any business with Merkosky

or National Novelty, had made purchases of pseudoephedrine[] but not in 1999 as the records

Case No. 1:02-CR-168
Gwin, J.

reported, or had purchased pseudoephedrine from Merkosky, but in much smaller quantities than those listed in his records." *Id.*

At trial, Defendant Merkosky put forth the defense that he sold products containing pseudoephedrine to "buying groups," or to retailers who would purchase large quantities of the products and then resell them in smaller quantities to other retailers. *Id.* Thus, Merkosky claimed that "the discrepancies in National Novelty's records were due to his attempts to comply with the DEA's requests that he keep records of the sales to secondary retailers, not the original buying group . . . . ." *Id.* at 831-32. Merkosky also contended that his wife, LaVonda Merkosky, and a salesman named Paul Phillips were responsible for maintaining National Novelty's records, and, as a result, Merkosky could not vouch for the correctness of these records. *Id.* at 832.

On August 7, 2002, a jury found the Defendant not guilty of count one – conspiracy to distribute a mixture of substance containing a detectable amount of pseudoephedrine in violation of 21 U.S.C. § 846 and 841 (d)(2) (subsequently re-codified as 841 (c)(2)). [Doc. 99, Att. 1 at 1.] Merkosky was found guilty of counts two and three – possession and distribution of pseudoephedrine in violation of 21 U.S.C. § 841(d)(2) and furnishing false or fraudulent sales records in violation of 21 U.S.C. § 843(a)(4). [*Id.*] Subsequently, the Court sentenced Merkosky to 135 months of imprisonment on count two and 36 months of imprisonment on count three, to be served concurrently. [*Id.*] The Court also ordered a term of supervised release for a period of three years. [*Id.* at 1-2.]

In first appealing his convictions to the Sixth Circuit, Merkosky argued that (1) there was insufficient evidence to support the convictions; (2) the *mens rea* component of 21 U.S.C. § 846 was unconstitutionally vague; (3) there was prosecutorial misconduct in the closing argument; (4) the

-5-

Case No. 1:02-CR-168
Gwin, J.

sentences were improperly calculated; and (5) there was a denial of due process from the prejudicial delay in bringing the charges.  *See Merkosky*, 135 Fed. Appx. at 830.  The Sixth Circuit concluded that only Merkosky's sentencing challenge was meritorious, holding that Merkosky's sentence violated the standards imposed by the intervening decision in *United States v. Booker*, 543 U.S. 220 (2005).  *See id.* at 836.  As a result, the Sixth Circuit affirmed the judgment of the Court, but remanded the case to the Court for re-sentencing.  *Id.* at 837.

The Sixth Circuit issued the mandate regarding Defendant Merkosky's re-sentencing on July 8, 2005. [Doc. 55.]  Merkosky then filed his first motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 69.]  The Court dismissed this motion without prejudice for lack of jurisdiction, as Merkosky was not under sentence at the time that he filed this motion. [Doc. 86.] Subsequently, the Court re-sentenced Merkosky; the Defendant successfully appealed his sentence and the Court sentenced him for a third time.  *See United States v. Merkosky*, 237 Fed. Appx. 66 (6th Cir. 2007); *see also* [Doc. 89.]  Currently, Merkosky's third appeal is pending in the Sixth Circuit. This third appeal concerns the Court's denial of Merkosky's motion for production of evidence and granting of the Government's motion to quash. [Docs. 88, 90, 93, 94.]

On January 14, 2008, Defendant Merkosky filed his second, *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  [Doc. 99.]  Previously, Merkosky had filed a motion requesting that he be allowed to file a brief in support of his second § 2255 motion that would exceed the 20 page limit. [Doc. 88.] The Court allowed Merkosky to file a supporting brief that was 30 pages, 10 pages over the stated page limit. [Doc. 92.]  Merkosky's actual brief, however, was 51 single-spaced pages in length. [Doc. 99, Att. 1.]  After filing his second § 2255 motion,

Case No. 1:02-CR-168
Gwin, J.

Defendant Merkosky also filed another motion requesting an extension of the local rule page limitations, stating that "given the numerous complex issues and documents involved . . . it was impossible to stay within the limitations" set by the local rules and by the Court. [Doc. 100.]

After the Government filed a motion to strike Defendant Merkosky's second § 2255 motion and his memorandum in support because of his failure to comply with the Court's order and local rules governing spacing and page limitations on January 16, 2008, [Doc. 104.], Magistrate Judge James S. Gallas issued a Report and Recommendation in which he recommended the Court grant in part the Government's motion to strike Defendant Merkosky's § 2255 motion to prevent consideration of Merkosky's brief after page 30.  [Doc. 120 at 18.]  The Magistrate Judge also recommended the Court deny Defendant Merkosky's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and his accompanying motion for an evidentiary hearing. [*Id.*]  The Defendant objected to the Magistrate Judge's Report and Recommendation.  [Doc. 121.] The Government responded to Merkosky's objections, [Doc. 123.], and Merkosky rebutted the Government's response, as well as moved the Court to hold recommendations in abeyance pending appeal. [Doc. 128.]  The Court considers the Defendant's objections below.

## II.  Legal Standard

*A. Federal Magistrates Act*

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of a Report and Recommendation to which an objection has been made.  *See* 28 U.S.C. § 636(b)(1).  As noted in Magistrate White's Report and Recommendation, any objections must be filed with the Clerk of Court within ten days of the report's issuance.  Parties waive their

Case No. 1:02-CR-168
Gwin, J.

right to appeal the Magistrate Judge's Recommendation if they fail to object within the time allotted.

*See* *id.*

*B. Section 2255*

Section 2255 gives a federal prisoner post-conviction means of collaterally attacking a conviction or sentence that he alleges to be in violation of federal law.  *See* *In re Gregory*, 181 F.3d 713, 714 (6th Cir. 1999).  Section 2255 provides four grounds upon which a federal prisoner may challenge his conviction or sentence: (1) That the sentence was imposed in violation of the Constitution or laws of the United States;(2) That the court was without jurisdiction to impose such sentence; (3) That the sentence exceeded the maximum authorized by law; or (4) That the sentence is otherwise subject to collateral attack.  *Hill v. United States*, 368 U.S. 424, 426-27 (1962); 28 U.S.C. § 2255.

To prevail on a § 2255 motion alleging a constitutional error, the movant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).  To prevail on a  § 2255 motion alleging a non-constitutional error, the movant must establish a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'"  *Id.* ((citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill,* 368 U.S. at 428)).

The Court can summarily deny a motion to vacate if it plainly appears from the face of the motion and any annexed exhibits that the movant is not entitled to relief. *Smith v. United States*, 348

Case No. 1:02-CR-168
Gwin, J.

F.3d 545, 550 (6th Cir. 2003).  Otherwise, the Court must hold an evidentiary hearing to determine the truth of movant's claims.  *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).  A § 2255 petitioner's "burden 'for establishing an entitlement to an evidentiary hearing is relatively light.'"  *Smith*, 348 F.3d at 550.  Nevertheless, the Court need not hold a hearing if the movant's allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact.  *Valentine*, 488 F.3d at 333.

*C. Procedural Default Standard*

A claim may become procedurally defaulted in two ways.  First, a petitioner may fail to comply with a state procedural rule in presenting his claim to the appropriate state court.  *See Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006).  In deciding whether a petitioner's federal claim is procedurally defaulted because of his noncompliance with a state procedural rule, the Sixth Circuit examines four factors:  (1) whether there is a state procedural rule that applies to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state courts actually enforced the procedural rule at issue; (3) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) if the petitioner did not comply with a state procedural rule that constituted an adequate and independent state ground, whether the petitioner has demonstrated that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.  *See Buell v. Mitchell*, 274 F.3d 347, 348 (6th Cir. 2001); *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a petitioner may cause his claim to be procedurally defaulted by failing to raise it

Case No. 1:02-CR-168
Gwin, J.

in state court and to pursue it through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *See Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This notion differs from exhaustion, as AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Thus, when state court remedies are no longer available to a petitioner because he fails to use them within the required time period, procedural default – not exhaustion – bars federal court review. *See id.* In Ohio, a petitioner cannot raise a claim in post-conviction proceedings when this claim could have been litigated before judgment or on direct appeal. *See id.* As a result, if an Ohio petitioner fails to adequately raise a claim on direct appeal, the claim is procedurally defaulted. *See id.*

To adequately raise a claim on direct appeal, a petitioner must "fairly present" the claim to the state court. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). In doing so, a "petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can demonstrate that his claim has been fairly presented to the state court as a federal constitutional claim by: (1) relying upon federal cases employing constitutional analysis; (2) relying upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

Case No. 1:02-CR-168
Gwin, J.

A habeas court will consider the merits of a federal claim that was procedurally defaulted in the state court only if "the petitioner can show cause to excuse his failure to present the claim[] appropriately in state court[] and actual prejudice as a result." *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Teague v. Lane*, 489 U.S. 288, 298-99 (1989).  To demonstrate cause, the petitioner must establish "that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin*, 434 F.3d at 417 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  To demonstrate prejudice, the petitioner must show "that the errors at trial 'worked to [petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).  Under this standard, prejudice does not occur unless the petitioner demonstrates that there is "a reasonable probability" that the outcome of the trial would have been different.  *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, "[i]n cases involving probable innocence, courts address the merits of the defaulted claim to avoid a fundamental miscarriage of justice." *Stanford*, 266 F.3d at 452; *see also Schlup v. Delo*, 513 U.S. 298, 317-23 (1995).  In claiming that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense," *Jones v. Bradshaw*, 489 F. Supp. 2d 786, 806 (N.D. Ohio 2007) (citing *Dretke v. Haley*, 541 U.S. 386, 392 (2004)), a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.  "[A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare" and, as a

-11-

Case No. 1:02-CR-168
Gwin, J.

result, "claims of actual innocence are rarely successful." *Id.* at 324.

### III.  Analysis

*A. Government's Motion to Strike*

      The Government has moved to strike Defendant Ronald Merkosky's second motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Merkosky's brief in support of the motion is 51 single-spaced pages long.  This brief exceeds the number of pages previously allowed by the Court by at least 21 pages.  Although Northern District of Ohio Local Rule 10.1, which outlines the formatting and spacing requirements of documents filed with the court, does not apply to *pro se* litigants, Local Rule 7.1, which sets out the maximum length of memoranda filed in the Northern District of Ohio, applies to all litigants.  Local Rule 7.1 states that memoranda relating to dispositive motions in standard cases must not exceed 20 pages and memoranda relating to all other motions must not exceed 15 pages in length.

      Further, Merkosky has demonstrated clear disregard for the Court's order permitting him to exceed the local rule page limits by 10 pages by filing not only an excessively lengthy brief, but also an accompanying motion stating that "given the numerous complex issues and documents involved . . . it was impossible to stay within the limitations" set by the local rules and by the Court. [Doc. 100.] As a result, the Court adopts the reasoning of the Magistrate Judge and grants in part the Government's motion to strike, thereby disallowing consideration of pages 31-51 of Defendant Merkosky's brief.

*B. Defendant Merkosky's 28 U.S.C. § 2255 Motion*

        1. Merkosky was indicted, convicted, and sentenced based upon testimony having no basis in fact or law

Defendant Merkosky asserts that he was indicted, convicted, and sentenced based upon

Case No. 1:02-CR-168
Gwin, J.

testimony that had no basis in fact or law.  Specifically, Merkosky argues that agent Malasky's testimony before the Grand Jury and at Merkosky's trial, as well as statements made by Assistant United States Attorney Feran at Merkosky's re-sentencing hearing, were contrary to the Eighth Circuit's decision in *United States v. Brown*, 461 F.3d 1062 (8th Cir. 2006) and 21 C.F.R. § 1310.04(f).  Merkosky's reliance on the cited authority is misplaced, however, because it does not negate the basis of his indictment, conviction, and sentence.  Further, agent Malasky and AUSA Feran's statements provided a point of reference regarding the issue whether Defendant Merkosky was selling pseudoephedrine for illegitimate purposes.

In *Brown*, the Eighth Circuit held that evidence of  sales of large quantities of pseudoephedrine was sufficient to establish the elements of the substantive charges of distribution and possession under § 841 (c)(2).  *See Brown*, 461 F.3d at 1069-70.  The court also noted that such evidence could support a conviction for the crime of conspiracy to violate § 841 (c).  *See id.* at 1069.  Sixth Circuit decisions have also acknowledged the common-sense rule that the purchase or sale of large amounts of pseudoephedrine could be evidence establishing that a particular individual knew that pseudoephedrine would be used to manufacture methamphetamine.  *See United States v. Hettinger*, 242 Fed. Appx. 287, 299 (6th Cir. 2007) (stating that the defendant's closely timed purchases of boxes of pseudoephedrine pills and the indication that these purchases were designed "to circumvent the store's policy of selling only three boxes of pseudoephedrine pills per transaction" suggested that the defendant "knew the pseudoephedrine would be used to manufacture methamphetamine"); *see also United States v. Kim*, 449 F.3d 933 (9th Cir. 2006) (holding that staying within the pseudoephedrine reporting threshold did not eliminate culpability of a defendant who knew or had a reasonable cause to believe that pseudoephedrine would be used for the

-13-

Case No. 1:02-CR-168
Gwin, J.

manufacture of methamphetamine).

Further, as the Sixth Circuit held when considering Defendant Merkosky's first appeal, evidence such as the numerous cases of pseudoephedrine products sold by Merkosky, the discrepancies between the actual number of cases purchased sold and the records kept by Merkosky, and the fact that two of the cases sold by Merkosky were seized from a California methamphetamine laboratory supported the charge of furnishing false or fraudulent sales records in violation of 21 U.S.C. § 843 (a)(4).  *See* *Merkosky*, 135 Fed. Appx. at 832-33.  Moreover, "[w]hen [viewing this evidence] in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt each of the elements of the charge of possession with intent to distribute pseudoephedrine." *Id.* at 833.

Defendant Merkosky argues that AUSA Feran's statements that Merkosky was ordering pseudoephedrine products from two suppliers at one time and agent Malasky's testimony that there was a quota on how many cases of products containing pseudoephedrine could be sold to stores at a single time and that it was illegal to sell cases in excess of this quota were untruthful, misleading, and prejudicial, resulting in Merkosky's conviction for a "fictional crime."  [Doc. 99, Att. 1 at 5.] Specifically, Merkosky contends that "there is simply no requirement which limits the amount of product a distributor is permitted to sell or how many vendors he purchases from. . . . There simply is not such thing as a 'normal quota'' it is not 'illegal to sell over quantity'; and it is not illegal to order 'from two suppliers at the same time.'" [*Id.*]

Merkosky's argument, particularly his reliance on *Brown*, is misplaced, however.  Although at the time of Merkosky's infractions, the reporting requirements were considerably more lenient, they did, in fact, exist.  *See* Amendment Pub. L. 106-310, Div. B, Title XXXVI, § 3622(a), 114 Stat.

-14-

Case No. 1:02-CR-168
Gwin, J.

1231.  Further, the testimony of agent Malasky and the statements of AUSA Feran served to establish the fact that Merkosky's sales of pseudoephedrine products had an illegitimate purpose that he knew or should have known about.  In this sense, suggestions that there were sales limits or quotas on sales of products containing pseudoephedrine were permissible because they established a point of reference regarding the issue whether Merkosky was selling pseudoephedrine for illegitimate purposes.  Thus, Defendant Merkosky does not succeed in demonstrating that allowing the statements and testimony in question caused an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings.

    2. The investigation concerning Merkosky's allegedly criminal activity was conducted by a federal employee posing as a federal law enforcement officer in violation of the Fourteenth Amendment

Defendant Merkosky argues that agent Malasky was the impetus behind the criminal investigation into Merkosky's conduct and obtaining a search warrant for Merkosky's place of business, house, and personal property and that Malasky was not a federal law enforcement officer and therefore was not authorized to conduct or order such criminal investigations or searches.  [Doc. 99, Att. 1 at 6.]  Because Merkosky failed to file a motion to suppress at trial or an appeal based on the use at trial of evidence uncovered as a result of the investigation and the searches, he is precluded from presenting this claim – which is actually a Fourth Amendment and not a Fourteenth Amendment claim – on collateral review.

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 482 (1976).  Further,

Case No. 1:02-CR-168
Gwin, J.

the Supreme Court's decision in *United States v. Johnson*, 457 U.S. 537 (1982) has suggested that *Stone* also precludes the raising of Fourth Amendment challenges on federal collateral review. *See Johnson*, 457 U.S. at 563 ("After *Stone*[,] . . . the only cases raising Fourth Amendment challenges on collateral attack are those federal habeas corpus cases in which the State has failed to provide a state prisoner with an opportunity for full and fair litigation of his claim, analogous federal cases under 28 U.S.C. § 2255, and collateral challenges by state prisoners to their state convictions under postconviction relief statutes that continue to recognize Fourth Amendment claims.").

Defendant Merkosky did not file a motion to suppress the evidence resulting from the allegedly unconstitutional search warrant and subsequent searches or investigations at trial. He also did not appeal based on the use at trial of evidence uncovered as a result of the searches and investigations in question. As a result, federal habeas relief is not available to Merkosky with respect to this claim due to his procedural default and Merkosky's failure to show cause and prejudice or actual innocence to excuse the default, as well as the principles elucidated in *Johnson* and *Stone*.

### 3. The search warrant affidavit was submitted with reckless disregard for the truth in violation of Merkosky's Fourth Amendment rights

Defendant Merkosky contends that agent Malasky made false, misleading, or inaccurate statements in the search warrant affidavit and that without these statements, there was no probable cause for the searches of Merkosky's place of business, home, and personal property. [Doc. 99, Att. 1 at 8.] First, the Court likely cannot consider this Fourth Amendment claim because Merkosky previously had a full and fair opportunity to litigate it and he failed to do so. This claim also fails on the merits. Even if the allegedly false statements were redacted from the affidavit, however, there

-16-

Case No. 1:02-CR-168
Gwin, J.

would still be sufficient probable cause for the searches.  As a result, the Court denies Merkosky

habeas relief with respect to this claim.

In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the Supreme Court held that a search

based on a warrant that contains deliberately or recklessly false allegations is invalid unless the

remaining portions of the affidavit provide probable cause.  To decide whether to suppress evidence

based on an allegation that the affidavit contained false statements, a court must determine: (1)

whether the defendant has proven by a preponderance of the evidence that the affidavit contains

deliberately or recklessly false statements; and (2) whether the affidavit, without the false

statements, provides the requisite probable cause to sustain the warrant.  *United States v. Charles*,

138 F.3d 257, 263 (6th Cir. 1998); *see also United States v. Bonds*, 12 F.3d 540, 569 n. 27 (6th Cir.

1993) (citing *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

Merkosky argues that the following statements made by agent Malasky in the affidavit were

false: (1) the sales records were kept at Merkosky' principal place of business, when in fact they

were at Merkosky's residence, when the DEA had been advised that the records were kept at

Merkosky's residence in Merkosky's November 30, 1997 letter; (2) DEA Diversion Group

Supervisor Ronald J. Townsend received a telephone call from Merkosky in late fall 1998, when the

first contact was in spring 1999; (3) Merkosky was alleged to have "no specific information: no

names, vehicle tag numbers or telephone numbers of the individuals calling requesting the

pseudoephedrine product," when agent Malasky had stated to the grand jury that Merkosky gave him

a customer list and highlighted some people that he should see; (4) agent Malasky falsified the

quantity of lot number 9964123A as 7 cases (1008 bottles, 144 bottles per case) when the report

-17-

Case No. 1:02-CR-168
Gwin, J.

from agent Lisa Romero discloses only 2 cases in this lot which is below the reporting and recording

requirements of 21 C.F.R. §1310.04(f); and (5) the 2 cases seized under lot number 9964123A in

California had been shipped from the manufacturer to Merkosky's business, National Novelty,

without National Novelty's knowledge or participation. [Doc. 120 at 16.; *see also* Doc. 99, Att. 1

at 8-14.]

Presuming that these statements were false, Merkosky does not demonstrate that probable

cause for the searches did not exist without them, as required by *Franks*.  Indeed, as the Sixth Circuit

pointed out when considering Merkosky's first appeal, there were sufficient allegations within the

remainder of agent Malasky's affidavit to demonstrate probable cause for the searches and seizures

leading to the evidence used to convict Merkosky.  *See Merkosky*, 135 Fed. Appx. at 831.  Thus, the

Court denies Merkosky federal habeas relief with respect to this claim.

    4. The indictment contains false and fraudulent material information in violation of
    Merkosky's Fifth Amendment rights

Defendant Merkosky argues that the grand jury was presented with perjured testimony from

agent Malasky, thereby violating Merkosky's Fifth Amendment rights.  [Doc. 99, Att. 1 at 15.]

According to the Sixth Circuit, issues involving false testimony before the grand jury are forfeited

if they are not raised before trial.  *See United States v. Combs*, 369 F.3d 925, 938 (6th Cir. 2004).

Additionally, "any indictment defect generated by alleged perjured testimony [is] cured by the jury's

verdict that [the defendant is] guilty of [the charged] offense. *Id.*; *see also United States v. Cobleigh*,

75 F.3d 242, 251 (6th Cir.1996) (citing *United States v. Mechanik,* 475 U.S. 66, 71-73 (1986)).

Merkosky did not raise the issue of agent Malasky's allegedly false testimony before trial and any

defect in the indictment was cured as a result of Merkosky's convictions.  As a result, the Court

-18-

Case No. 1:02-CR-168
Gwin, J.

denies Defendant Merkosky federal habeas review with respect to this claim.

### IV.  Conclusion

For the reasons stated above, the Court **ADOPTS** the Report and Recommendation of Magistrate Judge Gallas and **GRANTS** in part the Government's motion to strike and **DENIES** Defendant Merkosky's § 2255 motion and Merkosky's motion for an evidentiary hearing, as no such hearing is required to establish the lack of merit of the § 2255 motion.  The Court also **DENIES** as moot Merkosky's motion to hold recommendations in abeyance pending appeal.  Further, the Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could be taken in good faith, and the Court hereby issues a certificate of appealability pursuant to 28 U.S.C. 2253(c); Fed. R. App. P. 22(b) as to the first ground for relief – Merkosky's contention that he was indicted, convicted, and sentenced based upon testimony having no basis in fact or law.

IT IS SO ORDERED.

Dated: December 9, 2008                           s/        *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE